As Inglehart, who's worked at our court now for 27 years, I came on the bench on the 1st of April, 1990, and she had beaten me by a few weeks or so. It's always good to see us in our youth. You ready? May it please the Court, Ada Flager on behalf of Mr. Bermudez-Flores. I'd like to reserve five minutes for rebuttal, please. I'll begin by discussing Issue 1, the District Court's failure to abide by the 11-C1C agreement, and then turn to the second issue, the government's breach, to the extent that this Court has questions. So, at heart, this is a contract law case. The parties, the government, Mr. Bermudez-Flores, and the District Court, once it agreed to be reviewed and agreed to be bound by the 11-C1C, entered into a binding contract. And at that point, the District Court had only two options. To accept the contract in its entirety or to reject it in its entirety and personally offer Mr. Bermudez-Flores the opportunity to rescind the contract and withdraw his guilty plea. Now, the parties here disagree about the extent to which the District Court did not follow the 11-C1C agreement, but even the government's argument concedes that the District Court did not follow it in its entirety. The contract provided for a four-level downward departure pursuant to the fast-track program, and that downward departure was not provided. At the sentencing hearing, who was present that had signed this plea agreement? Mr. Bermudez-Flores had signed it. Counsel had signed it. And I believe a different counsel for the government had signed it. Right. So the only two people at the sentencing that had signed what's a five-page, single-space agreement were the Defendant and Defense Counsel. Correct, Your Honor. And it's just one clause in there that describes the downward departure. A couple of things. First of all, to the extent that Your Honor is arguing that only two parties had reviewed ---- I don't believe Judge Englehart is arguing. You're correct, Your Honor. I apologize. If you were, you'd know it. I slip into it. I guess what I'm driving at is it just looks like ineffectiveness to me. Unfortunately, Judge Englehart, if I'm not wrong, he had two defendants being sentenced that day. It looks like the transcript reflects there was a classroom in there. It was two months after the plea agreement had been submitted to him. And so there's one clause in there that says government court, part of the binding is that you'll give the downward departure. But it's new government counsel, and it's a district judge who just no one brought that to his attention. So instead of him ignoring what he knew was binding, no one had pointed that out to him. Isn't that the most plausible reading of what happened? All right. Excuse me. Do you need some water? Oh, I do. Thank you, Your Honor. So the two questions I have is how is this not ineffective? The PSR says it's downward departure. The agreement, the defendant and his counsel signed says it's a downward departure. They're the two that would know, and no one brings it to the judge's attention. I guess my first answer as to the ineffectiveness question is that I take no position on whether or not it was ineffective. Yes. Certainly, had I been there, would have objected. You just say, stop, Your Honor. Everyone's missing what we negotiated for. Correct. The issue here, though, is that the Rule 11 places a specific onus on the district court. Well, that's wrong, I think, because the district court didn't have the power to order the downward departure that you'd negotiated until the government moves. Right? This particular departure turns on a government motion. So Judge Englehart couldn't even give what the binding plea required him to give until the government moved. So to the extent that the agreement here, as provided for in 11c1c, was to the appropriate disposition, that's the operative part of the contract. And I understand Your Honor's comment that that's a single provision in the contract, but it is the most important. It is the most important, but he can't legally give what he's bound to give until the government moves forward. So in the plea agreement, the parties agree that the district court will provide that downward departure to the extent that — No, but do you agree with me that the law does not allow a district court to give a 5k3.1 except upon motion of the government? Your Honor, I can provide further briefing on that. My understanding is that the plea agreement is sufficient. Where the plea agreement is in 11c1c and sets forth that provision, that's sufficient. I believe that's my understanding of the local rules that have been signed here, that that's how the fast track program operates. I certainly can look into that and provide further briefing. The court can't move itself to provide a 5k3.1. My understanding is that this is sufficient to constitute that motion, but I certainly can provide further briefing. My understanding of the practice is that it's routinely provided based on the 11c. The interesting thing is that when the judge was commenting on the criminal history of the man, the government started piling on. Even though the government had entered into this agreement that it would seek this four-level downward departure. Correct, Your Honor. Again, I understand we have a substitute AUSA in there, but that really doesn't excuse that. You would think the AUSA would have read the plea agreement and understood what was in there. You would, Your Honor, and certainly having a new counsel doesn't amend or change any of the provisions of a binding contract, particularly here where the information that both the district court relied on and that the government argued at sentencing was not new information. It was, in fact, in the criminal complaint as well as in the factual basis that Mr. Bermudez-Flores had previously been removed and returned several times. Let me ask you, did you move for an expedited appeal? I did not move for an expedited appeal. I would urge you to do that in the future when, as I understand it, your client, his sentence expires in less than a year. It does, Your Honor, and that was an absolute oversight. When does it end? I believe there's actually only about a month left of his sentence. So what's the relief? Even if you win, what do you get? The relief here is that Mr. Bermudez-Flores, because he wasn't under 11C-5, provided the opportunity to withdraw the plea and to withdraw the guilty plea. He should be remanded for the opportunity to withdraw his guilty plea. But so we remand, vacate, I guess the custom would be to a different district judge just so that he can plead again and get more time, but he's bumping up against the statutory max already. Well, Your Honor, respectfully, we cannot assume that he would plead again. But he'd be even worse off not to plead. Then he goes to trial, and could he even get more time on a crime he's already served the statutory max for? My understanding is that he could not get additional time on it. And also, Your Honor, that would be Mr. Bermudez-Flores's decision whether or not he wanted to maintain the guilty plea or whether he wanted to return to being cloaked in the presumption of innocence. And to the extent that this court would find that ill-advised and would find it proper for him to maintain a guilty plea, respectfully, that is not a decision for this court to make. So to the extent that the relief has been— Do you really think the district court can move that quickly? Let's say he says, I want to withdraw my plea and go to trial. What, are you going to have him sit in jail while he awaits trial? I think at that point we would, again, move for a bond and potentially also move for an immigration bond. This case is certainly limited by outside realities. I don't think that this court's ruling is limited by those realities. And certainly there should have been an attempt to expedite the plea. Very respectfully, I did not ask for any continuances. I should have asked for an expedited plea. It did, however, take six months from the moment that the reply brief was filed to this day, which has significantly reduced the available remedies for Mr. Bermudez-Flores. And I understand the exigencies of this court in all of those matters, but I don't think that that should be counted against Mr. Bermudez-Flores himself. So the law is absolutely clear. This is clear error. Even if it were an oversight, even if it were unintentional, the district court has agreed both at rearrangement and at the start of the sentencing hearing to be bound by this 11C1C plea agreement. And we can presume that the district court in agreeing to it. You say it's clear error, but don't you have to rise to plain error? Clear and obvious error. I'm referring to prongs one and two of plain error and can turn to prong three. But it is clear under this court's precedent that it's clear and obvious error to have not complied with Rule C-5. If the district court were going to reject the plea agreement, and I don't think that there's an intentionality requirement, as Your Honor asked earlier, if the district court is going to reject the plea agreement, which it certainly did here, it is required to personally address Mr. Bermudez-Flores, not to address counsel, not to have counsel keep in his mind that he should stand up and object, but Mr. Bermudez-Flores, who speaks very limited English and was listening to this through an interpreter, should have, under the rules, been personally addressed, informed that the district court was rejecting the plea, and offered the opportunity to withdraw his guilty plea. That didn't happen here, and that is clear error, both under this court's precedent and under the federal rules themselves. Now, because we are on plain error review, this court still must determine whether or not that affected Mr. Bermudez-Flores. And you conceded plain error review, is that right? I do, yes, Your Honor. Wasn't there some objection or at least a point raised by defense counsel at the sentencing hearing about the judge's determination about what sentence was to be imposed? There was, Your Honor. There was an objection to the failure to credit this four-level downward departure, confusingly referred to as the acceptance of responsibility, but from context it's quite clear that it is the four-level acceptance of responsibility under the fast track program. There was not an objection to the failure to properly reject the 11th UNC. There wasn't an objection specifically to the fact that the plea agreement was binding, obviously to the extent that this court finds this is not plain error review. You wouldn't object to that? No, I certainly would not object to that. But I was unable to find precedent that that constituted a sufficient objection. You concede in your brief that it's – you concede, of course we, not the parties, decide on our standard review, but you concede in your brief it is plain error review. I do, Your Honor, yes. Because it was more than I think you've described. I thought the confusion was about the sentencing guideline range and the lawyer objected to that, but I don't believe the lawyer objected to the failure to give this four-level downward departure. The lawyer did object to the district court's determination that it was a level 6 rather than a level 2, and that can only be understood to be a disagreement about whether or not to impose the four-level downward departure. That's how you get from the level 6 to the level 2. So there wasn't objection to that extent. But to the extent that this court does determine that we are on plain error review, it must still decide whether or not this error affected Mr. Bermudez-Flores' substantial rights. Tell us again. You want us to write an immediate opinion, then you want us to send it to a different judge and tell him to immediately reconvene a plea hearing, and then you want Flores to – Bermudez-Flores to have a choice whether to withdraw his plea or it would seem almost arguably the plea is blown up by what has happened here, and then you'd have to enter into more plea or whatever, and he's got less than a month to serve. Correct. Correct, Your Honor. That is the remedy that is available. Again, that remedy is quite unfortunate, and my participation in it I regret, but it doesn't change this court's legal analysis regarding what the error is and whether or not it affected Mr. Bermudez-Flores' substantial rights. I'm aware of no precedent that says that because the remedy is limited, it isn't available. So the question at prong three is whether or not the error here, the rejection of the plea agreement without offering Mr. Bermudez-Flores the opportunity to withdraw it, whether or not that affected the outcome of proceedings. And this Court's precedent in self and also— Could you go to the discretionary prong? Certainly, Your Honor. The minute remaining. The discretionary prong in this case is quite strong. Obviously, this Court has discretion, but in this case it is a judge-injected error, which slightly changes the calculus. Tell me how this would reflect poorly on the integrity, public reputation, et cetera, of a federal court. In several ways. As we argued in our brief, first, the plea agreement system is central to the proper functioning of the district court. Defendants should be permitted to contract with the government  In Santabello, the Supreme Court discusses this at length. In particular, that argument is strong in this case where there is a separate incentive being created for defendants to move these cases through quickly. In the fast-track program, for its proper functioning, the defendants must be able to rely on the fact that they will get the benefit of their bargain. These are all low-level crimes. They are all defendants who otherwise might receive low sentences. They need to be able to believe that they, in entering into a fast-track provision, will receive the benefit of that bargain, particularly to the extent that this is created in order to limit the court's backlog. Finally, the bargaining power of the two parties to this contract suggests that this court should exercise its discretion. Mr. Bermudez-Flores is an undocumented immigrant from Honduras with a sixth-grade education from Honduras. On the other side, the other two parties to this contract are a federal judge and the United States government. And to the extent that this Court finds plain error in this case, it certainly would affect the fairness, integrity, and public reputation of proceedings not to uphold that contract. I see that. Mr. Higginson has a question. When you say the other two parties to the contract, I'm not aware of any Rule 11 law that makes the district court a party to this contract. The contract is between your client and the defendant, correct? In an 11C1C plea agreement, this Court's precedent says specifically that the district court becomes a party to the plea agreement, and that's also, I believe, in Freeman, the recent Supreme Court decision. On rebuttal, I can pull up the specific citation to that. Thank you, Your Honors. Thank you, Counsel. On rebuttal, I'll give us the closest date you can to when his sentence is to end. Thank you, Your Honor. Good morning. May it please the Court. My name is Ryan McLaren. I represent the United States on this appeal, and I'm joined this morning by Assistant United States Attorney Greg Kennedy, who negotiated the plea in this case. I would like to start by highlighting two things that may have been lost in opposing counsel's argument. First, that the district court got the most important thing right when it said the correct guidelines range of zero to six months. And then second, on top of that, the district court gave reasons for why it believed that the zero to six month range was too short and why it believed that the two-year range was appropriate. My focus is not the district court's actions here. There's no question the Bryan letter here bound. It's a C1C plea, right? Yes, Your Honor. And there's no question that on pages one and two of that plea, it bound that the consideration that was given to the defendant is a 5K3.1 fast-track departure, right? Your Honor, that's correct. The defendant was given a 5K3.1 downward departure. Pursuant to 5K3.1, yes, a four-point departure in his offense. And the only way that can happen is if the government moves for it. Your Honor, I don't believe that that's correct based on the fact that, again, as Bermudez Flores, as counsel said, the fact that this is an 11C1C, the fact that this is an 11C1C and not a 5K motion, that in accepting this plea agreement, the court accepted that this four-point departure would apply. I'm not understanding that. I'm just reading the language of 5K3.1, early disposition program. Upon the motion of the government, the court may depart. Did the government ever move before sentencing, at sentencing, ever? Your Honor, my understanding is that the government did not explicitly move. Okay. So if the government didn't move but it negotiated that it would move, how is that not a breach? I'm sorry, Your Honor. If the government's negotiated with them that they would get a fast-track departure and that fast-track departure is triggered by the government moving, if the government never moved, how is that not a breach? Well, Your Honor, I think to answer your question in two parts. First, I think even though the government didn't explicitly move, I still think that because this is an 11C1C, at least implicitly, the language in the plea agreement suggests that the court in accepting the plea agreement What case do you have that has an implicit motion for downward departure? Your Honor, I don't have a case available. Because the district court, to me, what happened here is the district court, two months after you file, it walks in busy sentencing and it thinks, okay, it's an odd language, it's not a point-specific sentence, and I see this guy's criminal history. It doesn't restrict me from an upward departure. I've got no downward departure in front of me, so I can upwardly depart. But instead, what happens is the court says, I'm thinking about doing that. I'd like to hear from everybody. And the government says, look at this man's immigration history. Artificially low guidelines, complete disregard. But the only way a defendant becomes eligible for U.S. attorney discretion to give a departure is if the U.S. attorney decides he doesn't have a criminal history related to immigration offenses. So when you promise them you'll move for a downward departure, it's your having concluded that his immigration history doesn't warrant an upward departure. Your Honor, I believe that to the extent that this goes to the first issue raised by Bermudez-Flor is the plea agreement. I can talk about that or I can talk about it in terms of breach. I'm interested only in breach. Only in breach? It seems like the government promised a downward departure and the government never moved for it and, in fact, argued for the opposite. Well, Your Honor, I think this kind of goes to what Judge Barksdale raised with the third and fourth prongs. We concede that the four-point departure should have been given and that it wasn't in this case, that Mr. Bermudez-Flor should have gotten the two and instead got the six. But looking at this in terms of kind of two points here, that the zero to six-month range was correct and that whether it was the two or whether it was the six, the zero to six-month range was going to be there. And then on top of that, the fact that I know you said you don't want to talk about what the district court did at sentencing, but looking at the fact that Judge Englehart gave reasons, he clearly believed that the zero to six-month range was too short and that the two-year sentence was appropriate. And I guess my problem with that is, and I do want to talk about Rule 11 and the plea agreement itself, there was no specific term of imprisonment. It wasn't specified, the length of it, in the plea agreement. Is that right? But given the language, it's a formula for doing a calculation. And if you apply the formula as per the plea agreement, the only range you could arrive at would have been zero to six. Isn't that right? Yes, Your Honor, that's correct. So for the judge to do anything else is for him not to comply with the terms of an agreement by which the district court is bound. Isn't that right? No, Your Honor, that is not correct. What the district court was bound to do in the terms of the plea agreement was to use this mechanism to determine the offense level, in this case, which would have resulted in the two. But the district court had already accepted the plea agreement. Yes, Your Honor, that's correct. And it's not bound by the terms of an agreement that it had already accepted. Either the court accepts the agreement or it says to the defendant, I will not accept it, and gives him an opportunity to reject or to withdraw his plea. Isn't that right? Yes, Your Honor, and we concede that the first two prongs of plain error, as far as it goes to the district court accepting that part of the plea agreement and enforcing the two instead of the six, we concede those first two prongs. However, to the extent that you're asking about the third and fourth prongs, maybe, whether the judge accepts an 11C1C. First, I'd like to point to a case cited by opposing counsel throughout their brief. Are you saying the judge accepted the 11C1C? Your Honor, I'm saying that the judge accepted the guilty plea, but by not imposing the two, by imposing the six, that the judge did not do what it was bound to do under the 11C1C. But I would like to make two brief points. Tell us how it affected his substantial rights and tell us how he is not entitled to, in our discretion, sending this back. And when you do that, don't rely on this discretionary prong you argue in your brief at 19, which comes from a dissent urging a much more stringent test for discretion than the fairness, integrity, or public reputation of a federal court. Yes, Your Honor. So under the third prong and under the fourth prong as well, there has to be some point where an error was made and the district court could have gone one way and instead went the other way. A reasonable belief on review that the court would have gone that other way if not for the error. And in this case, we just simply don't have that. We have the error of the district court not imposing the two and instead imposing the six. But no matter what, if it was the six or if it was the two, it was going to be the zero to six months range. What government breach of plea agreement case is cured by Rule 52? Cite any case where the government explicitly breaches the plea and a court of appeals says harmless or no miscarriage. Well, Your Honor, I can't point to a case specifically on that. That's because we in Muniz and Roberts and a line of authority have said we construe it's a separate issue whether the government is not fulfilling its bargain. So this man had no option to go to trial. That's what C1C gives him if the plea is only taken piecemeal. So by not getting that term, he should have had the option of going to trial, but he never was given that option, right? Your Honor, that's correct. And again, we concede the first two prongs. So what case says that the right to go to trial could be harmless? Well, Your Honor, I think that that's kind of the two issues here raised by Bermudez-Flores. One is the district court's not accepting the plea, and then the other one is the government's breach. And so I don't want to mix those two issues up. Well, I'm only interested in would we ever, as an appellate court, apply Rule 52 to excuse the government's breach. It may not have been intentional. It's a new assistant U.S. attorney who walks in. But the guy comes in expecting a downward departure because he's cooperated with immigration laws. And instead, the government says he has not cooperated. He's completely disregarded it. And the court, using that exact reasoning, goes up. Well, Your Honor, I can't point to a case where this court has found breach. But I can point to a case where, under plain error, if your breach was alleged, this court looked to the third and fourth prongs, that being this court's 2014 decision in Hinojosa. And in Hinojosa, this court found that where it was clear what the, and that's a case that we cite in our brief, this court found where it was clear what the sentencing court was going to do. The district court was not going to grant this relief that the defendant felt he was entitled to. But it was clear which direction the sentencing court was going to go. That that was enough under the third and fourth prongs to uphold the sentence in that case. And in this case, we have exactly that. We don't need to guess what Judge Englehart was going to do. We know what Judge Englehart was going to do. He says very clearly in the record that he believed that the zero to six-month range, which would have applied either way, was too short. Maybe too short. He'd like to hear from the parties. And then the government speaks. And the government says it's artificially low when, in fact, the government had agreed to move to go even lower. Well, Your Honor, I think it's important to look at what the AUSA said in the context of the whole sentencing. By the time the AUSA is asked to speak at the sentencing, Judge Englehart has already said, given all these reasons, he said in his words that the zero to six months would be a slap on the wrist. That he believes that Bermudez Flores, who was illegally reentered at that point five times, has shown disrespect for the immigration laws. And then in the context of the sentencing, looking at what the AUSA actually said. But he might not have felt that way if the government had interrupted and said, no, Your Honor, he actually hasn't shown disrespect because he's agreed to the fast track. He's helped us in this context. We've assessed in his criminal history and immigration history warrants a downward departure, not an upward departure. That's what the government said it would do. And, Your Honor, that may be the case, although I would suggest that looking at what Judge Englehart said in the sentencing, that he had a pretty good idea of where it was going by the time he asked the government to speak. It's also important to look at what the AUSA actually said in this case. The AUSA didn't bring any new information to Judge Englehart's attention. The AUSA didn't ask for a departure. All that the AUSA did was, when asked to speak by Judge Englehart, paraphrase things that Judge Englehart had already said during the sentencing. That Bermudez Flores, that his sentence was, in fact, artificially, that his identity hadn't been prosecuted for these previous re-entries. And also that he has shown disrespect for the immigration laws. These are all things that were either in the PSR or things that Judge Englehart had already said at sentencing. And I think that that's important, that the AUSA didn't interrupt the district judge, didn't jump in and ask for a departure. Instead, when asked to speak, and as you said, Judge Higginson, an AUSA is stepping in for another AUSA at a sentencing brand new to the case. Of course, that's no excuse. I notice you're a special assistant U.S. attorney. Tell me what a special assistant U.S. attorney is. Your Honor, that's a term for anybody, basically anybody in the office, who's not an assistant U.S. attorney. So I just get the special tag because of that. I hope I answered your question, Judge Higginson. But I guess, I mean, I don't think you disagree. There's no law that excuses a government breach because the assistant U.S. The government's not arguing that. But it seems to me, rather than trying to assign blame, what happened here is, you know, one of these very dense, five-page, single-space, it's got one clause that's vital for level departure. AUSA didn't know about it, so she does or he does commendably saying, no, this guy should go high, artificially low. District court can't even give the departure until the government moves for it. Government never moves. That's a breach. Your Honor, again, I would respectfully disagree. You disagree there's a breach, or you're arguing that under plain error review, we shouldn't correct? I disagree, again, and not to linger on this point. Oh, it's an important point. I want to know, do you disagree that the government breached its agreement, page 1 and 2, we will move for a forward-level downward departure? Your Honor, I think that that's the point of disagreement. I don't believe that the plea agreement requires the government to explicitly move for the four-point departure. I think where you are on that is by virtue of the plea agreement itself, Judge Higginson is saying that the government has to, subsequent to the plea agreement, the government has to actually move under 5K. What you're saying is by virtue of the terms of the agreement, the only thing left for the government to do is, because the exception is included in the agreement, it says the government will not recommend the departure if, and then it lists some conditions. But other than that, you're bound by the terms of the agreement, because he keeps the terms by doing exactly what you ask him to do, pursuant to the terms of the plea agreement, and you keep them. He gets a downward departure. So what you're saying is as a practical matter, there's no requirement that a motion is made. Is that what you're saying? Your Honor, that's correct. That's what makes it a 5K motion. By virtue of this being an 11C1C and accepting the plea agreement, the court was bound to give this four-point departure, the government's subsequent motion notwithstanding. But you've conceded clear or obvious error. So now you're saying because under the third or fourth prong, we shouldn't send this back. For purposes of the first issue raised by Bermudez-Flores, that's correct, Your Honor. We don't concede the first two prongs for the alleged breach, the statements by the AUSA. But for the first issue, yes, we do concede the first two prongs. You're familiar with the United States v. Self. Yes, Your Honor. Why shouldn't the same result obtained in this case as in that case? Well, Your Honor. What's different about it? The biggest difference in that case, and the thing that I would like to highlight the most in this case, was that in that case the district court got the guidelines range wrong, and in this case the court got the guidelines range right. Whether it was an accident in this case, the court got the guidelines range right. Whether it was the two or the six, it was going to be the zero to six months no matter what. In Self, in rejecting part of the 11C1C in that case, and I think it was accepting recommendations by the PSR in that case, the court imposed or found a guidelines range that I think was twice as high as what was in the agreement that was agreed upon by the parties. But the calculation in this case was specified in the plea agreement, wasn't it? The offense level calculation. What was to be determined was to be based on the calculation which was specified in the plea agreement. The range wasn't specified, but there was a calculation in that plea agreement. Yes, Your Honor. And if that calculation was followed, there's only one result that could have been reached. Yes, Your Honor. So the calculation that's specified in the plea agreement is the four-level departure, the four-point departure for offense level, and that's it. The plea agreement doesn't stipulate to a guidelines range. It doesn't stipulate to a specific sentence. And so you're correct in saying that the only outcome could have been the zero to six months. But the outcome was still the same, zero to six months, whether it was the six or whether it was the two. In this case, the four-level departure, the four-point departure, doesn't wind up having a difference on the zero to six months range. We've got about four minutes left, and I'm still waiting to have you tell me why we shouldn't, in our discretion, vacate this judgment and send it back. Well, Your Honor, I think for purposes of the first issue, are you more concerned with the plea agreement? Please, Counselor, just answer my question. Okay. Well, Your Honor, I think really what's the most important thing here is looking at the sentencing as a whole, looking at what Judge Inglehart said, looking at the fact that he got the guidelines range right and that he believed, based his sentence on his belief, that that guidelines range was insufficient, that the zero to six months was too short. If you look at what Judge Inglehart said, he says that, in his words, that a zero to six months range was going to be a slap on the wrist, that he felt compelled to encourage respect for the immigration laws. Let me start over with you, Counselor. You and I have got three minutes. I want you to answer my question. You have conceded, and you keep talking about issue one and issue two. I don't want to hear about that. The government agreed on a sentence, not a sentence, but the government agreed on a procedure. The government breached the plea agreement. There's no question about that. The AUSA shows up and drops the ball, and it's no excuse that he's a substitute. Why, in our discretion, would we not send this back? Just answer that question. Yes, Your Honor. Looking at this court's discretion, for purposes of the AUSA's statements, one, it's clear in looking at what the AUSA said. That's enough. I don't want to hear from you. You've answered my question by not answering it. I've never seen so much wiggle waggle and obstruction by a lawyer in this court. I'm sorry, Your Honor. You don't need to answer my question. I only have one question. Given our questions, if, in fact, we determine there's a breach and it's not harmless or excusable, how do we best get that relief as quickly as possible for this defendant, who is now bumping up against maximum time, with the oddity of the relief being he's got to go back to plead to a crime he's fully served too long a sentence for? How do we effectuate if we find that there's a reversible error? Your Honor, I think that there is one of the big problems here, looking at the third and the fourth. I know. I'm asking you to help us help someone we may feel needs relief, rather than say, yeah, this is a problem. How can the government help solve this problem that began at its breach? How do we get this man out of jail if that's what he's entitled to? Your Honor, in the event that that becomes an issue, I would imagine that, to be honest, I really don't know the specific answer to that. As you said, we're running up against the maximum that he would be serving anyway, so I don't know if there is a sufficient answer to that. Maybe he should have moved for expedited government. Maybe this is a case sometimes you need to look at and say, boy, our conduct was mistaken, and this gentleman is suffering because of it. Your Honor, that's correct, and that's my fault. I apologize for that. I'd like to very briefly conclude just by saying that there is no reversible error in this case, even though we conceded the first two prongs on the issue of the 11C1C, looking at the fact that the guidelines range was correct and the fact that what Judge Englehart said over the course of the sentencing, there was no reversible error, and for these reasons the government respectfully requests that this court affirm Bermuda's as far as its convictions and sentence. Thank you. Roboto. First, to answer Judge Barksdale's question, I unfortunately don't have access to Internet, so I can't give you the exact date. I know that in April would be when his release date would be with good time and that a full two-year term would be August 26, 2017, but presumably with good time, and my memory of the BOP inmate release date that it's, in fact, in April. The government concedes error at prongs one and two of the second issue, but, in fact, their reasoning concedes error. Please don't talk about issue. At least tell us what you're talking about, counsel. I apologize. The parties agreed to a binding 11C1C plea agreement. It means one of two things under the rules themselves, either that the parties agreed to particular provisions of the guidelines applying or that the parties agreed that a particular sentence or sentencing range applies. We disagree about which one of those two 11C1C provisions applied, but under either of those, the defendant did not receive the benefit of that 11C1C. If it's a narrow 11C1C only to the four-level downward departure, he didn't receive that either because the government breached or because the district court rejected the 11C1C without providing him the opportunity to withdraw. If it was an agreement to a particular sentencing range, zero to six months, then the district court rejected that 11C1C by sentencing him to the statutory maximum sentence. So the distinction between sentencing range and the provision here is of no moment since it would be an error under either provision. The government argues that at prong three, the question should be whether or not the court would have done the same thing. Respectfully, that is not the question at prong three for these errors. The question here at prong three was the district court should have offered Mr. Bermudez-Flores personally the opportunity to rescind this plea agreement and also withdraw his guilty plea and be presumed innocent. It is the question of whether or not he, Mr. Bermudez-Flores, whether there's a reasonable probability that he would have withdrawn the plea. And I think that the balance of all of the evidence demonstrates that he would. He didn't receive any benefit for this bargain that significantly constrained him, both by requiring him to plead guilty by constraining him at sentencing and constraining him on appeal. There is no benefit for this in the absence of that single element of consideration. And finally, we can't ignore the context of this. Mr. Bermudez-Flores was going to have a zero to six-month sentencing range regardless of what happened. He was a criminal history category of one, which nobody disagrees with. If he had gone to trial and been found guilty, he would have had an offense level eight and a zero to six-month range. So to the extent that the government argues that the only benefit Mr. Bermudez-Flores should have received was a discretionary sentencing range of zero to six months, it entirely defies credibility. There is no benefit of the bargain at that point because that's what he would get anyway. If he pleaded guilty, he pleaded guilty without a plea agreement if he went to trial and was sentenced. And finally, while I understand that this Court is rightfully very concerned about whether or not Mr. Bermudez-Flores can obtain the benefit of this Court's relief, that is not a reason not to grant relief. It certainly is a reason to attempt to work as quickly as possible for us to do as much as we can. But it does not change that. Not moot. Correct, Your Honor. Not moot. You could have moot to expedite. That's one point we've already discussed. But again, the two people that signed this plea agreement that were in the court at sentencing were defendant and defense counsel. The court says I'm going to upwardly depart. The person that signed that agreement was the defendant and defense counsel, and he doesn't say you can't. Correct, Your Honor. And that's why we're on plain error review. But because there is no absolute forfeiture, this Court still considers it. And, in fact, I would encourage consideration of this Court's ruling in Self where, in fact, the error was even more egregious than in counsel's error, was even more egregious. And both Mr. Self and counsel were offered the opportunity to withdraw the plea in that case. It just was technically not the right way to offer to withdraw the plea. This case, there wasn't even that pause in proceedings to ask whether or not he should have rescinded it. And that's why the protections of 11C5 require the personal addressing of a defendant, particularly here where he's speaking through an interpreter and has little understanding of the justice system. Thank you, Your Honor. Thank you, counsel. The Court will take that matter under advisement.